# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| |
|---|
| ANDREW BUCCELLATO, <br><br> **Plaintiff,** <br><br> v. <br><br> **COMMISSIONER OF SOCIAL SECURITY,** <br><br> **Defendant.** |

Civ. No. 18-14839 (KM)

**OPINION**

## KEVIN MCNULTY, U.S.D.J.:

Plaintiff Andrew Buccellato brings this action pursuant to 42 U.S.C. § 1383(c)(3) to review a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381. Buccellato seeks to reverse the finding of the Administrative Law Judge ("ALJ") that he has not met the Social Security Act's definition of disabled since February 8, 2014, the alleged injury-onset date.

The question is whether the ALJ's decision is supported by substantial evidence. Specifically, Buccellato contends that the evidence does not support the ALJ's (1) finding as to his residual functional capacity ("RFC"); and (2) decision that the Commissioner met the burden of proof at Step Five of the Sequential Evaluation Process in determining that there were a significant number of jobs existing in the national economy that Buccellato was able to perform.

For the reasons stated below, the decision of the ALJ is **AFFIRMED**.

## I. BACKGROUND[1]

### A. Facts

The claimant, Mr. Buccellato, injured his back while playing college lacrosse in 2011 or 2012. (R. 364). He graduated later that year and worked full-time until 2014. (R. 364–65). At some point thereafter, Buccellato's back injury was diagnosed as spondylolisthesis. (R. 13). On April 16, 2014, Buccellato underwent spinal fusion back surgery to address the spondylolisthesis. (R. 364). After the surgery, the surgeon advised him to avoid heavy lifting but did not otherwise restrict his activities. (R. 297 & 324).

In February 2015, Buccellato underwent a second surgery to correct the "botched" first procedure. (R. 111). Six months after the second surgery, Buccellato tore a tendon in his ankle while shooting basketballs with his friends. (R. 116). His podiatrist, Dr. Ralph Napoli, gave him a brace to wear as his ankle healed, for "sports and physical activity." (R. 602). The injury eventually healed and is no longer problematic. (R. 118).

Beginning in the fall of 2016, Buccellato began working as a paid, part-time, grade-school lacrosse coach. (R. 102–105).

Throughout this time, Buccellato's spinal health was monitored by Dr. Robert Parangi, who also completed two disability reports on Buccellato. On September 18, 2014—about seven months after the first surgery—Dr. Parangi opined that Buccellato could not sit, stand, or walk sufficiently to work an eight-hour day and that he had limitations reaching, handling, fingering, and feeling (R. 376–77).

---

[1] Citations to the record are abbreviated as follows:

| "DE __" | = | Docket entry in this case; |
| "DE 8" | = | Buccellato's brief; |
| "DE 9" | = | The Commissioner's brief; |
| "DE 10" | = | Buccellato's reply; |
| "R. __" | = | Administrative Record (DE 4) (page numbers refer to the page numbers in the lower-right corner of the page—not the ECF docket page numbers). |

2

On March 22, 2017, Dr. Parangi opined that Buccellato could not sit, stand, or walk sufficiently to work an eight-hour day; would be less than 80% efficient while working; and would likely miss two to three days per month due to his physical impairments and periodic medical treatment. (R. 625–627).

### B. The SSI Application and Hearing

On August 24, 2014, Buccellato applied for SSI under Title XVI of the Social Security Act, asserting that his disability—lumbar spine fractures and severe muscle spasms—began on February 8, 2014. (R. 79). His application was initially denied on October 29, 2014, and again upon reconsideration on March 11, 2015. *Id.*

On May 16, 2017, Buccellato, accompanied by a non-attorney representative, appeared before ALJ Ricardy Damille. *Id.*; *see also* (R. 96). The ALJ heard testimony from Buccellato and Mary Anderson, a vocational expert ("VE"). (R. 94).

At the hearing, the ALJ posed to Anderson three hypotheticals, essentially variations on Dr. Parangi's diagnosis of Buccellato:

#### 1. The First Hypothetical

[ALJ:] Assume a person [of the] same age, education, [and] work experience as the claimant. Let us assume that this individual is restricted to light work; the individual can occasionally climb ramps, stairs, ladders, ropes, and scaffolds; the individual can occasionally balance, stoop, kneel, crouch, and crawl. Can an individual with these restrictions perform the claimant's past work, as [has] been described?

[Anderson:] The individual he would not be able to do the warehouse work, and the forklift operator jobs. . . . The individual *would be able* to do the work of the quality control . . . inspector. . . . The individual *would be able* to do the assistant manager job as well.

### 2. The Second Hypothetical[2]

[ALJ:] . . . Let's say, if the individual [were] restricted to sedentary work; the individual can occasionally climb ramps and stairs; [could] never climb ladders, ropes, and scaffolds; the individual [could] occasionally balance, stoop, kneel, crouch, and crawl; the individual must be afforded the option to alternate from sitting to standing, so long as the individual is not off-task for more than 10 percent of the work day. And let's also add that the individual is restricted to understanding, remembering, and carrying out simple instructions. I'll conclude that this individual cannot perform the claimant's past work as we described?

[Anderson:] He cannot, your honor.

[ALJ:] Is there other work for such an individual?

[Anderson:] Yes, your honor. The individual . . . would be able to do the work of address clerk; . . . document specialist; . . . [and] election clerk . . . .

### 3. The Third Hypothetical[3]

[ALJ:] . . . [N]ow let's say if the individual can sit for no more than two hours in an eight[-]hour day, can stand for no more than two hours in an eight[-]hour day. How would that affect your answer?

[Anderson:] The individual would not be able to do these jobs.

[ALJ:] Is there other work for such an individual with these restrictions?

[Anderson:] No, your honor.

[ALJ:] All right. Is your opinion consistent with the [Dictionary of Occupational Titles ("DOT")]?

[Anderson:] It is, your honor.

(R. 121–23).

---

[2] This hypothetical represents the classification into which the ALJ ultimately placed Buccellato.

[3] This hypothetical represents the classification that Buccellato now seeks.

4

## C. The ALJ's Decision

After the hearing, the ALJ held the record open for five days to allow Buccellato to submit additional evidence pertaining to his second surgery. (R. 79). No such supplemental evidence was received. *Id.*

On September 21, 2017, the ALJ issued a decision finding that Buccellato was not disabled within the meaning of the Social Security Act. (R. 79-88). The ALJ determined that Buccellato's impairments were severe, but he also determined that given Buccellato's age, education, work experience, and RFC, he was capable of making a successful adjustment to other jobs that existed in significant numbers in the national economy. (R. 88).

The ALJ followed a five-step process to determine that Buccellato was not disabled. The ALJ's findings are summarized as follows:

**Step One:** At step one, the ALJ determined that Buccellato had not engaged in substantial gainful activity since February 8, 2014, the alleged onset date. (R. 81).

**Step Two:** At step two, the ALJ determined that Buccellato had the following severe impairments: status post L2 to L4 fusion and status post revision of the lumbar spine and spondylosis at L2 and L3. (R. 81-82).

**Step Three:** At step three, the ALJ determined that Buccellato did not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Pt. 404, subpt. P., app. 1. (R. 82).

**Step Four:** At step four, the ALJ determined that Buccellato had the RFC to perform sedentary work. (R. 82). The ALJ found that Buccellato could "occasionally climb ramps and stairs but [could] never climb ladders, ropes and scaffolds. He could occasionally balance, stoop, kneel, crouch and crawl." (*Id.*). The ALJ determined that Buccellato "must be afforded the option to alternate from sitting to standing so long as he is not off task for more than 10% of the workday [and that h]e is limited to understanding, remembering and carrying out simple instructions."

However, the ALJ did not highly credit Dr. Parangi's testimony:

5

> I assign little weight to Dr. Parangi's opinion because it is inconsistent with his treatment records and the overall medical evidence of record. In his opinion, he attributes the claimant's significant limitations due to degenerative disc disease of the lumbar spine and fusion surgery. However, as discussed in details above, his spinal fusion surgery was generally successful. While treatment records note a lumbar revision surgery, this surgery report is not on record. In addition, Dr. Parangi endorses extreme environmental and manipulative limitations that is simply not supported by the treatment records and the type of treatment the claimant received. The claimant was primarily treated for lumbar spine injuries and there is no evidence that he complained of problems with his hands or other severe impairments. Dr. Parangi's own reports fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant endorsed these limitations, and he did not specifically address this weakness. As such, little weight is accorded to his opinion.

(R. 86).

The ALJ found that Buccellato was unable to perform any past relevant work; that he was twenty-three years old—thereby categorizing him as a "younger individual" within the SSA—on the alleged disability onset date; and that Buccellato he has at least a high school education and is able to communicate in English. (R. 87).

**Step Five:** At step five, the ALJ considered Buccellato's age, education, work experience and RFC in conjunction with the Medical-Vocational Guidelines. (R. 87). Relying on the testimony of the vocational expert, the ALJ identified several representative jobs that Buccellato could perform: (1) address clerk; (2) document specialist; and (3) election clerk.

Accordingly, the ALJ determined that Buccellato was not since February 8, 2014, disabled as defined by the Social Security Act. *Id.*

## II. DISCUSSION

### A. Standard of Review

As to all legal issues, this Court conducts a plenary review. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). As to factual findings, this Court adheres to the ALJ's findings, as long as they are

supported by substantial evidence. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing 42 U.S.C. § 405(g)). Where facts are disputed, this Court will "determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (internal quotation marks and citation omitted). Substantial evidence "is more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Id.* (internal quotation marks and citation omitted).

When there is substantial evidence to support the ALJ's factual findings, this Court must abide by them. *See Jones*, 364 F.3d at 503 (citing 42 U.S.C. § 405(g)); *Zirnsak*, 777 F.3d at 610-11 ("[W]e are mindful that we must not substitute our own judgment for that of the fact finder."). This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Commissioner's decision, or it may remand the matter to the Commissioner for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865-66 (3d Cir. 2007).

In reaching a decision, an ALJ is only required to addressed relevant examinations, opinion evidence, and the claimant's complaints. *See Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981) (An ALJ is only required to "indicate that s/he has considered all the evidence, both for and against the claim, and provide some explanation of why s/he has rejected probative evidence. . . . [T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice.").

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five-step inquiry. *See Podedworny*, 745 F.2d at 221-22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or

7

if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119–20 (3d Cir. 2000).

### B. The Social Security Act and the Five-Step Process

To qualify for SSI, a claimant must meet income and resource limitations, and show that "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1383c(a)(3)(A). A person is deemed unable to engage in substantial gainful activity

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 1382c(a)(3)(B).

Under the authority of the Social Security Act, the Administration has established a five-step evaluation process for determining whether a claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. This Court's review necessarily incorporates a determination of whether the ALJ properly followed the five-step process prescribed by regulation. The steps may be briefly summarized as follows:

**Step One:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). If yes, the claimant is not disabled. If not, move to step two.

**Step Two:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. If the claimant has a severe impairment, move to step three.

**Step Three:** Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Pt. 404, subpt. P, app. 1, Pt. A. (Those Part A criteria are purposely set at a high level to identify clear cases of disability without further analysis). If so, the claimant is automatically eligible to receive benefits; if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

**Step Four:** Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If yes, the claimant is not disabled. If not, move to step five.

**Step Five:** At this point, the burden shifts to the Commissioner to demonstrate that the claimant, considering his age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see also Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

Buccellato's appeal hinges on the ALJ's findings as to his RFC, which he says are not supported by substantial evidence. (DE 8 at 20). A claimant's RFC is not a medical issue that reflects the nature and severity of the claimant's impairment. *See Titles II & XVI: Med. Source Opinions on Issues Reserved to the Comm'r*, SSR 96-5P, 1996 WL 374183 at *2 (S.S.A. July 2, 1996). Instead, it is an administrative finding reserved for the Commissioner. *Id.*; *see also Pintal v. Comm'r of Soc. Sec.*, 602 F. App'x 84, 87 (3d Cir. 2015) ("The ultimate legal determination of disability is reserved for the Commissioner."); *see also Robinson v. Colvin*, 137 F. Supp. 3d 630, 644 (D. Del. 2015) ("[O]pinions that a claimant is 'disabled' or 'unable to work' are not medical opinions and are not

9

given special significance because opinions as to whether or not a claimant is disabled are reserved for the Commissioner."); 20 C.F.R. § 404.1527(d) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").

An ALJ is not bound by the capacity determinations of a treating physician. *See Brown v. Astrue*, 649 F.3d 193, 197 n.2 (3d Cir. 2011). Indeed, the determination of disability is so legal in nature that the ALJ may disregard a medical opinion entirely or not solicit one in the first place. *See Mays v. Barnhart*, 78 F. App'x 808, 813 (3d Cir. 2003) ("[T]he ALJ . . . is not required to seek a separate expert medical opinion."); *Glass v. Colvin*, No. 14-237, 2015 WL 5732175 at *1 (W.D. Pa. Sept. 30, 2015) ("[T]he ALJ is not limited to choosing between competing opinions in the record . . . .").

Instead, medical opinions are credited only if they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2). An ALJ may also elect to disregard a medical opinion entirely: "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996); *see also Irey v. Colvin*, No. 13-7423, 2016 WL 337019 at *4 (E.D. Pa. Jan. 27, 2016) ("[T]he ALJ is not bound by the opinion of any one physician[] and can reject an opinion if there is a lack of support or a finding of contradictory evidence in the record.").

### C. Discussion

Here, Buccellato's central argument is that that the ALJ erred when he determined that Buccellato had a residual functional capacity that left him capable of working, *i.e.*, "not disabled." In essence, Buccellato seeks a RFC classification akin to the ALJ's third hypothetical posed to Anderson, *supra*. Buccellato's subsidiary argument is that the ALJ erred in disregarding his treating physician's medical opinion.

However, the ALJ's decision was supported by substantial evidence and, under the deferential standard of review afforded to his determination, he did not err in assigning little weight to Dr. Parangi's opinion. His decision does not now warrant reversal.

The ALJ determined that Buccellato had

> the residual functional capacity to perform sedentary work . . . except [Buccellato] could occasionally climb ramps and stairs but [could] never climb ladders, ropes and scaffolds. He could occasionally balance, stoop, kneel, crouch and crawl. [Buccellato] must be afforded the option to alternate from sitting to standing so long as he is not off task for more than 10% of the workday. He is limited to understanding, remembering and carrying out simple instructions.

(R. 82). While Buccellato believes that his first surgery had been botched and necessitated a second procedure, the limitations suggested by Dr. Parangi—that he could not sit, stand, or walk sufficiently to work an eight-hour day; would be less than 80% efficient while working; and would likely miss two to three days per month—are not well-supported by the record, as the ALJ found.

For instance, Dr. Parangi treated Buccellato for lumbar spine injuries, but the record does not suggest that the condition spread to Buccellato's hands or that he has any other severe impairments. Furthermore, the ALJ determined that "Dr. Parangi's own reports fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant endorsed these limitations, and he did not specifically address this weakness." (R. 86). The ALJ did not entirely dismiss Buccellato's physical limitations. Instead, he incorporated many of them into his findings that Buccellato could only perform a reduced range of sedentary work.

The ALJ's ten-page written decision examined and considered the testimonial and written opinions of several witnesses. Based on a careful analysis, and based on the other, inconsistent evidence, the ALJ gave only partial weight to Dr. Parangi's conclusions, as he was entitled to do. A district court owes applies a deferential standard of review to the factual findings of

11

administrative bodies, and Buccellato has not shown that that the ALJ overlooked or improperly disregarded any piece of material evidence.

Buccellato's filings in this court repeatedly express a concern that the ankle injury he sustained on a basketball court in August 2015 colored the ALJ's decision:

> The other problematic statement in just the introduction is the repeated reference to the "fact" that a few months after his second surgery, Buccellato was well enough to play basketball. . . . Unless the Defendant, and the Administrative Law Judge before, had some notion that this was not what happened, then the claim that being able to play basketball was not consistent with the functional limitations described, is simply not based on facts.

(DE 10 at 6–7; see also DE 8 at 13–14, 23). In both filings to this Court, Buccellato emphasizes that he was not *playing basketball*, but was instead *shooting baskets*.

Although the Commissioner's brief to this court might be said to give undue weight to the basketball evidence (see DE 9 at 1–4), the ALJ's decision did not. The ALJ's decision contains three references to basketball.

The first reference occurs in connection with a finding at Step 2 that the ankle injury (not the back impairment that is the main focus of the claim) did not constitute a severe, ongoing impairment:

> The claimant has also been treated or evaluated for other symptoms and complaints that appear periodically throughout the record. Treatment records indicate that the claimant *fractured his left ankle while playing basketball* on September 4, 2015 (Exhibit SF/7). He underwent ligament reconstruction in the left ankle on February 18, 2016 (Exhibit SF/10). Nonetheless, during his post-operative visit on May 24, 2016, the claimant denied experiencing pain from surgery. Treatment records also note that the claimant started a new job that required him to stand all day at a light store (Exhibit SF/191). Finally, he testified at the hearing that his left ankle is fine. Thus, the evidence supports a conclusion that this impairment would pose no more than a minimal effect on his ability to perform basic work activities. Accordingly. I find that the claimant's left ankle fracture is a non-severe impairment.

(R. 82) The distinction between shooting baskets and playing basketball has no bearing on the ALJ's assessment of the nature or severity of the ankle fracture.

A second reference to basketball occurs in the ALJ's summary of a third-party function report (R. 240) filed by Andrew Buccellato, the claimant's father:

> I assign partial weight to Mr. Buccellato's statements due to its inconsistency with the objective medical evidence of record. Although the claimant did have some limitations due to his lumbar fusion surgery, treatment records indicate that surgery was successful and alleviated his symptoms. As noted above, the claimant was able to play basketball and return to part time work as a lacrosse coach.

(R. 86)

A third reference to basketball occurs in the course of the ALJ's discussion of evidence of daily activities in connection with determination of the claimant's RFC:

> Despite his alleged impairment, the claimant has engaged in a normal level of daily activity and interaction. As discussed above, the claimant injured his left ankle in September 2015, while playing basketball (Exhibit 5F/7). At the hearing, he testified that he was shooting basketballs in August 2015.

(R. 85) This reference was part of a list of daily activities carried on during the disability period; others included part-time work at a light store and coaching lacrosse. This was no more than a passing reference to "playing basketball," which was immediately clarified in the following sentence, which referred to the claimant's testimony that he was "shooting basketballs." (*Id.*)

Nor was this an ALJ who didn't know the difference, as the hearing transcript demonstrates:

> [ALJ:] . . . Now, and you mentioned that by August you were able to play basketball? Is that what --
>
> [Buccellato:] *No, I was not able to play basketball, I was just simply standing around shooting.*

13

> [ALJ:] *You were standing shooting.*
>
> [Buccellato:] Yeah.
>
> [ALJ:] Okay. *All right. Trying to get that right. Okay.*

(R. 117) (emphasis added).

In short, these passing references could not have had an effect on the ALJ's determination of the RFC. The ALJ discussed the relevant medical and other evidence, sifted it, and gave reasons for crediting, partially crediting, or not crediting various portions of it. While accepting that the claimant's impairments could be expected to manifest themselves in symptoms, the ALJ concluded that the evidence only partially supported the claimant's statements as to their intensity, persistence, and limiting effects. As to that determination, any distinction between "playing" and "shooting" a basketball—to the extent it was even intended by the ALJ—could not have made any difference. The error, if it was an error, was surely harmless.

The remaining claims of error fail because there was no reversible error in the determination of the RFC, which was supported by substantial evidence. The second, not the third, hypothetical corresponded to the ALJ's determination of the RFC. The claim that the ALJ erred in finding that there were jobs in the national economy that the claimant could perform likewise rests on the claim of error in the RFC, which I have rejected. Based on the RFC as determined by the ALJ, the Step 5 determination that the claimant could perform sedentary jobs such as address clerk, document specialist, and election clerk, was supported by substantial evidence.

### III. CONCLUSION

Buccellato has not shown that the ALJ's decision is unsupported by substantial evidence. Accordingly, the ALJ's decision is **AFFIRMED**.

A separate order will issue.

Dated: November 14, 2019

*/s/ Kevin McNulty*

**Hon. Kevin McNulty**
**United States District Judge**